HAYS HOME DELIVERY, INC., Appellant, v. EMPLOYERS INSURANCE COMPANY OF NEVADA, AND EVERETT GREEN, AN INDIVIDUAL, RESPONDENTS.

No. 35602

September 12, 2001                                    31 P.3d 367

---

*Laxalt & Nomura, Ltd.,* and *Ellen Jean Winograd,* Reno, for Appellant.

*Creighton G. Oler* and *Shirley D. Lindsey,* Associate Counsel, Employers Insurance Company of Nevada, Reno, for Respondent.

*Everett Green,* Las Vegas, in Proper Person.

# OPINION

*Per Curiam:*

At issue in this appeal is whether respondent Everett Green, an owner-operator of a local trucking company, is a statutory employee of appellant Hays Home Delivery, Inc., under Nevada's Industrial Insurance Act (NIIA). If we determine that Green is a statutory employee, then Green is entitled to workers' compensation benefits. We conclude that Green is a statutory employee of Hays because Green and Hays are not independent enterprises, but, instead, Green and Hays are in the same trade of delivering merchandise, and Green's trucking service would normally be carried on through an employee rather than an independent contractor. Therefore, Green is entitled to workers' compensation benefits, as are other owner-operators like him.

Appellant Hays Home Delivery, Inc., is a national logistics management company incorporated in Delaware and qualified to do business in Nevada. Hays provides appliance, electronics and furniture delivery services nationwide for retailers like Montgomery Wards, Sears and Circuit City. Retailers contract with Hays to deliver merchandise from their retail stores and warehouses to customers. Hays then enters into agreements with "owner-operators," instead of hiring drivers of its own, to deliver the merchandise. After a sale to a customer is completed by a retailer, merchandise is shipped to the retailer's warehouse where Hays's "owner-operators" receive the merchandise. After inspecting the merchandise for damage, the owner-operators take possession of the merchandise, load it onto their trucks and deliver the merchandise to customers.

Respondent Everett Green entered into an agreement with Hays in 1993, whereby Green, operating under the name "E & L Movers," became an owner-operator for Hays. The agreement set forth the terms and conditions of the relationship between Green and Hays. In part, this agreement stated that Green was not Hays's employee, but rather, Green was merely an independent contractor. Furthermore, under the agreement, Green was required to carry, at his own expense, liability, property and occupational accident insurance. The occupational accident insurance was issued by a private, third-party insurance carrier, but was administered by Hays. Moreover, the agreement allowed Green to hire additional employees to assist in delivering merchandise. Accordingly, Green hired as many as fifteen employees to deliver merchandise. As required by the agreement between Hays and Green, Green purchased insurance from respondent Employers Insurance Company of Nevada (EICON) for the workers he employed.

Green was also required under the terms of the agreement to obtain a vehicle to facilitate the delivery of merchandise, and was required to bear the maintenance costs of the vehicle. Accordingly, Green leased a vehicle from the same lessor that other owner-operators utilized, which was the same length, size and type that Hays's other owner-operators used. Hays, not Green, had accounts set up at various repair shops where Green and other owner-operators would take their vehicles for repair. Under the agreement, Green was also responsible for the purchase of uniforms and equipment such as dollies and blankets to facilitate the deliveries.

In December 1996, Green claimed that his knee and lower back had been injured while making a delivery. Accordingly, Green submitted a claim to his private insurance carrier. Pursuant to the policy, Green was paid for both medical expenses and lost earnings.

In January 1997, only a month after Green was injured, Hays terminated its relationship with Green. Apparently because Green's relationship with Hays was terminated, or because Green failed to pay his monthly premiums, Green's private insurance carrier terminated his policy. In May 1997, five months after he was injured, Green submitted a claim to EICON.

EICON initially rejected Green's claim because EICON was "unable to substantiate an employee/employer relationship existed or exists" between Green and Hays. After investigating Green's claim, however, EICON reversed its initial determination, and accepted Green's claim in September 1997. Hays appealed. Upon reviewing Green's claim, a hearing officer concluded that Green was not a statutory employee of Hays, and, therefore, the hearing officer reversed EICON's acceptance of his claim.

EICON and Green then appealed the hearing officer's determination that Green was not a statutory employee of Hays. The appeals officer reversed the previous finding that Green was not a statutory employee, and determined that Green was, in fact, an employee entitled to workers' compensation benefits. Hays then petitioned the district court for judicial review.

The district court denied Hays's petition because it found that the appeals officer's determination that Green was an employee entitled to workers' compensation benefits was supported by substantial evidence and was not clearly erroneous. Hays now appeals to this court.

In this appeal, we must decide whether respondent Green, and other owner-operators like him, are statutory employees under the NIIA and therefore entitled to workers' compensation benefits.

This question is a matter of statutory construction; accordingly, our review is de novo.[1]

For purposes of the NIIA, an "employee" is defined as "every person in the service of an employer under any appointment or contract of hire."[2] Reference to this definition alone, however, does not answer the question whether Green and owner-operators like him are considered "employees" under the NIIA.

The parties to this dispute vigorously contest whether Green is an "independent contractor" under the NIIA. However, we note that the NIIA is uniquely different from industrial insurance acts of other states because pursuant to the explicit provisions of NRS 616A.210(1) independent contractors may be deemed "employees."[3] In Nevada, non-construction cases are differentiated from construction cases, and in non-construction cases like this one, the "normal work test," articulated in our decision in *Meers v. Haughton Elevator*[4] and codified in NRS 616B.603, determines whether independent contractors are "employees" under the NIIA.[5] We must analyze the relationship between Green and Hays under *Meers* and NRS 616B.603 to determine whether Green is a statutory employee and therefore entitled to workers' compensation benefits.

NRS 616B.603 provides that an entity is not considered an employer under the NIIA if the entity enters into a contract with an "independent enterprise," *and* the contracting entity is not in the "same trade, business, profession or occupation" as the inde-

---

[1]*State, Dep't of Mtr. Vehicles v. Lovett,* 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994) ("Construction of a statute is a question of law subject to de novo review.").

[2]NRS 616A.105.

[3]NRS 616A.210(1) reads: "Except as otherwise provided in NRS 616B.603, subcontractors, *independent contractors* and the employees of either *shall be deemed to be employees* of the principal contractor for the purposes of chapters 616A to 616D, inclusive, of NRS." (Emphasis added.) *See SIIS v. E G & G Special Projects,* 103 Nev. 289, 290, 738 P.2d 1311, 1312 (1987) ("Workmen's compensation statutes in Nevada are 'uniquely different' from those in other states in that they provide coverage for independent contractors and subcontractors." (quoting *Noland v. Westinghouse Elec. Corp.,* 97 Nev. 268, 270, 628 P.2d 1123, 1125 (1981))); *Aragonez v. Taylor Steel Co.,* 85 Nev. 718, 720, 462 P.2d 754, 755-56 (1969) ("Nevada's Industrial Insurance Act is uniquely different from the industrial insurance acts of other states in that independent contractors and subcontractors by [statute] are accorded the status of employees."); *see also Meers v. Haughton Elevator,* 101 Nev. 283, 285, 701 P.2d 1006, 1007 (1985).

[4]101 Nev. 283, 286, 701 P.2d 1006, 1007-08; *see also Farish v. Courion Indus. Inc.,* 722 F.2d 74, 80 (4th Cir. 1983) (quoting 1C Arthur Larson, *Law of Workmen's Compensation,* § 49.12, 9-37 (1980)).

[5]*See Tucker v. Action Equip. and Scaffold Co.,* 113 Nev. 1349, 1356, 951 P.2d 1027, 1031 (1997).

pendent enterprise.[6] Therefore, in order for Hays to show that Green is not an employee, Hays must demonstrate that Green is an ''independent enterprise,'' *and* that Green and Hays are not involved in the ''same trade, business, profession or occupation.''

NRS 616B.603(2) defines an ''independent enterprise'' as ''a person who holds himself out as being engaged in a separate business and: (a) [h]olds a business . . . license in his own name; or (b) [o]wns, rents or leases property used in furtherance of his business.'' It is clear that Green was an independent enterprise as defined in NRS 616B.603(2) because Green satisfies the statutory test.

The record reveals that Green held himself out as being engaged in a separate business. Green maintained that he was in the delivery business, while Hays claimed that it was in the ''contracts logistics management'' business. Green held a business license under the name ''E & L Moving.''[7] Finally, Green leased a truck he utilized to deliver furniture and appliances, and owned hand trucks and other equipment to facilitate deliveries. Therefore, although Green and Hays's businesses were closely related, Green held himself out as being engaged in a separate business, held a business license in his own name and owned, rented or leased property used in furtherance of his business. Accordingly, Green was an independent enterprise separate and distinct from Hays.

However, in order to determine that an employment relationship did not exist between Green and Hays, we must conclude that Green was an independent enterprise, *and* that Green and Hays were not in the ''same trade'' as codified in NRS 616B.603(1)(b) and defined in *Meers*.[8] We conclude that although Green was an

---

[6]NRS 616B.603(1) reads:

A person is not an employer for the purposes of chapters 616A to 616D, inclusive, of NRS if:

(a) He enters into a contract with another person or business which is an independent enterprise; and

(b) He is not in the same trade, business, profession or occupation as the independent enterprise.

[7]We note that we need not proceed further to determine whether Green is an independent enterprise. NRS 616B.603 states that an ''independent enterprise'' is a person who holds himself out as being engaged in a separate business *and* holds a business license in his own name, *or* owns, rents or leases property used in the furtherance of his business. Therefore, Green need only hold the license, *or* lease property, but he need not do both to be considered an ''independent enterprise.'' However, in this case Green did both.

[8]This court has concluded that the *Meers* test only applies to non-construction cases or those construction cases that involve a contractor that

independent enterprise, Green and Hays were, in fact, in the "same trade." Therefore, an employment relationship existed between Green and Hays, and Green is entitled to workers' compensation benefits.

In *Meers,* we stated that the type of work performed by the independent contractor will determine whether an employment relationship exists.[9] Therefore,

> the test is not whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether that indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.[10]

This test was later codified in NRS 616B.603, which states that an employment relationship only exists if the parties are "in the same trade, business, profession or occupation."[11]

We conclude that Green and Hays are in the "same trade," and that Green performed work that would "normally" be carried on through employees of Hays and not independent contractors. Both Green and Hays were in the "trade" of delivering merchandise from retailers to end-customers. Although Hays attempts to distinguish its business from Green's by characterizing Hays's business as administrating the deliveries, and Green's business as delivering the merchandise, this distinction is unpersuasive. Even though Green arguably delivered the merchandise, while Hays arguably only acted as an administrator and oversaw the deliveries, both Green and Hays are in the same trade of delivering merchandise from retailers to end-customers. Therefore, notwithstanding any minimal distinction between Green's and Hays's functions, both are in the same trade of delivering merchandise.

---

is not licensed pursuant to NRS Chapter 624. As the instant dispute clearly does not involve contractors, the *Meers* test applies. *See Tucker,* 113 Nev. at 1356, 951 P.2d at 1031.

[9]*Meers,* 101 Nev. at 286, 701 P.2d at 1007.

[10]*Id.*

[11]*See* NRS 616B.603; *see also Oliver v. Barrick Goldstrike Mines,* 111 Nev. 1338, 1349, 905 P.2d 168, 174-75 (1995).

A review of the cases cited by Hays reveals that courts of other jurisdictions that have determined that owner-operators such as Green are not statutory employees base such conclusions upon specific legislation that has been enacted in those states which excludes these owner-operators from the definition of employees.[12] Although the Nevada Legislature is free to enact equivalent legislation, it has chosen not to do so. We must resolve this dispute under Nevada's current statutory scheme, not by interpreting extra-jurisdictional mandates. Reference to Nevada's statutory scheme makes clear that an employment relationship existed between Green and Hays, and therefore Green is entitled to workers' compensation benefits.

Our review of the record reveals that Green and Hays are in the "same trade," namely, the delivery of merchandise from retailers to customers. Therefore, under NRS 616B.603(1)(b) and *Meers,* an employment relationship existed between Green and Hays, and, because an employment relationship existed, Green is entitled to workers' compensation benefits under the NIIA.

Accordingly, we affirm the district court's order, which denied Hays's petition for judicial review and affirmed the appeals officer's determination that Green was an "employee" of Hays as defined under Nevada's Industrial Insurance Act.

---

[12]Hays argues that twenty-nine states and the District of Columbia exclude owner-operators like Green through case law or statutes from the definition of employees in the workers' compensation context. Hays contends that some states, such as Iowa, Oklahoma and Georgia, have enacted statutes which specifically exempt owner-operators from workers' compensation coverage. *See, e.g.,* Okla. Stat. Ann. tit. 85, § 3(6) (West 1992) ("'Employee' shall not include a person, commonly referred to as an owner-operator, who owns or leases a truck-tractor or truck for hire, if the owner-operator actually operates the truck-tractor or truck and if the person contracting with the owner-operator is not the lessor of the truck-tractor or truck."); *State Compensation Ins. Fund v. Brown,* 38 Cal. Rptr. 2d 98 (Ct. App. 1995) (determining that owner-operators like Green were "independent contractors" under California's workers' compensation system, and therefore were not employees under that state's statutory system).